STATE of Oklahoma ex rel. OKLAHO-
MA BAR ASSOCIATION,
Complainant,

v.

Tom E. SMITH, Respondent.

SCBD No. 2808.

Supreme Court of Oklahoma.

Aug. 26, 1980.

---

Doyle W. Argo, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Tom E. Smith, Poteau, for respondent.

SIMMS, Justice:

Formal Complaint alleging professional misconduct was made in this Court against Respondent Attorney by the Board of Directors of the Oklahoma Bar Association and the Complaint prayed Respondent be disciplined or disbarred from the practice of law in Oklahoma. A copy of the Complaint was transmitted to Respondent and thereafter, Duane A. Woodliff was appointed Trial Authority by the Chief Justice of this Court.

Following a lengthy evidentiary hearing, the Trial Authority submitted a written report to this Court containing detailed findings and recommended that Respondent be disbarred.

Complainant Bar Association timely filed its Brief in compliance with 5 O.S.1971, Ch. 1, App. 1, Art. 10, Sec. 16(a). Respondent obtained an extension of time to file his answer brief. No further extensions of time to file answer brief have been sought and Respondent defaulted on his brief. Thereafter, order was issued to Respondent directing him to show cause, if any he had, why this matter should not be submitted to the Court for consideration on the record made before the Trial Authority and the brief of Complainant Association. Tom E. Smith has not responded to the show cause order. We have reviewed the record of evidence made before the Trial Authority to ascertain if such evidence warrants disbarment. We conclude that it does.

Respondent represented R. B. Bell and his radio station in a law suit brought in LeFlore County where Bell was defendant. Bell had a substantial counter-claim predicated on the theory of manufacturers' products liability against the entity which had sued him. Smith, with Bell's consent, retained an Oklahoma City lawyer with expertise in the field of products liability to assist in the trial. The second attorney was retained on a contingent fee basis, but with the provision that he be reimbursed for his actual expenses associated with the case.

Bell prevailed on his counter-claim and plaintiff appealed. Co-counsel sent a bill to Respondent Smith for reimbursable expenses connected with the case which was to be submitted by Smith to Bell for payment by Bell. Respondent billed Bell for total litigation expenses of over $8,000.00 which figure included $2,207.96 reimbursable expenses of the Oklahoma City attorney. Bell paid Smith the $8,000.00 plus, but Smith repeatedly refused demands by his Oklahoma City co-counsel to pay the $2,207.96. Bell also demanded that Smith pay the associate counsel or return the money to Bell so that Bell could directly pay the expense items to associate counsel. Bell's demands were likewise refused. It was not until 16 months after Smith received the

money from Bell, and 7 months following the filing of a complaint with the Bar Association, that Smith paid the $2,207.96 to the Oklahoma City lawyer. Documentary evidence introduced before the Trial Authority conclusively established that the expense monies belonging to another lawyer were co-mingled with Respondent's personal funds and converted by Smith for his personal benefit.

Additional evidence in support of disciplining Smith indicates that Smith and his associated co-counsel borrowed $25,000.00 from a bank in Oklahoma City for the specific purpose of lending the money to their client, Bell, to keep Bell's radio station operating during appeal, and further grant associated co-counsel and Smith an option to purchase an interest in the radio station. The promissory note was co-signed by Smith and associate counsel, and was guaranteed by the law partners of the associate counsel. After the loan arrangements were completed, the money was wired to the Poteau State Bank where it was deposited in Respondent's personal bank account. Smith and his associate counsel had agreed that Smith was to finalize this financial arrangement with Bell and then disburse funds from the $25,000.00 deposit, necessary to keep the radio station in business. It developed that the agreement was never completed with Bell in that Bell was able to arrange for funds elsewhere, and was unaware of the $25,000.00 deposit made for his benefit.

Undisputed evidence before the trial authority showed at the time the $25,000 was placed in the bank, Respondent was $6,719.00 overdrawn. The overdraft on Smith's personal account was immediately satisfied from the proceeds of the loan. The balance of the money was spent by Smith primarily for personal expenses. None of the money was used for the intended purpose of the proceeds of the loan.

The Oklahoma City lawyer demanded an accounting by Smith. At the hearing before the Trial Authority, Smith admitted that he repeatedly lied to his associate counsel about the status and whereabouts of the money, and that through deceit and misrepresentation, he hid from associate counsel the fact that he had converted the money to his own use. After a period of time, the Oklahoma City lawyer personally confronted Smith about the matter, and after consulting with independent counsel, Smith admitted in writing to "embezzling" $25,000.00 of "trust" funds. Sometime thereafter, Smith repaid the $25,000.00 to the lawyer from Oklahoma City who in turn paid the promissory note in full. However, Respondent failed to pay, and has never paid, $738.54 of accrued interest on the note.

Trial Authority found that the $25,000.00 was borrowed through the efforts of co-counsel to assist a client if needed by the client; that Smith held the funds in trust; that the funds were co-mingled by Respondent Smith with funds which were personal in nature; that the $25,000.00 was misappropriated and converted to Smith's personal use; that Smith breached a trust; and that Smith's conduct involved serious acts of "dishonesty, fraud, deceit, and misrepresentation."

The third subject of complaint involved the issuance of an "insufficient funds" check to a Texas court reporter. Smith submitted to the court reporter a check for $412.00 drawn on his trust account located at the Central National Bank, Poteau, Oklahoma, as payment for previous work and for additional work the court reporter was to do. The check was returned unpaid by the Bank marked "insufficient funds." Bank records introduced at trial show that at the time the check was issued, this trust account had a balance of $38.35. The check was presented to the Bank on two occasions and there was at no time sufficient funds in this particular account to pay the check. The court reporter notified Smith of the insufficient funds check by letter, demanded payment, and made a subsequent demand through an attorney. Later, Smith responded to an inquiry from the Oklahoma Bar Association regarding the matter, to the effect that he had mailed a cashier's check to the court reporter and further

explaining that he had two trust accounts, one at the Central National Bank, and the other at the Poteau State Bank, and through inadvertence he had used the wrong trust account.

However, bank records from the Poteau State Bank indicate that during the dates involved, Respondent had no trust account with that particular bank. The court reporter did not receive the cashier's check referred to by Smith. Respondent Smith presented no evidence at the hearing to support his testimony that a cashier's check had been purchased or mailed to the court reporter. It was not until a year and a half after the court reporter first made demand for payment that Smith satisfied this outstanding obligation.

The Trial Authority found that Respondent grossly neglected the obligation to the reporter and induced her to do substantial work for him upon presenting a "trust" check, which he knew or should have known, was insufficiently funded; that Respondent's actions do not appear to have been in good faith, and adversely reflect on his fitness to practice law.

██ Addressing the issue of non-payment of co-counsel's expense money which had been advanced to Smith by his client for payment to counsel, 5 O.S.1971, Ch. 1, App. 1, Art. IX, § 6, provides in pertinent part:

"Where money or other property has been entrusted to an attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or set-off for fees against any money or other property of his clients coming into his hands for such specific purpose, and a refusal to account for and deliver over such money or property upon demand shall be deemed a conversion.
* * * "

Wrongful use of a client's money may warrant discipline by this Court. *State ex rel. Okla. Bar Ass'n. v. Kessler, Okl., 573 P.2d 1214 (1978).* Not only did Smith convert funds belonging to his client, but he committed a wrong against his associate counsel. In *Johnstone, Jr. v. State Bar of California, Cal., 410 P.2d 617, 618 (1966),* it was held that:

"When an attorney receives money on behalf of a third party who is not his client, he nevertheless is a fiduciary as to such third party. Thus, the funds in his possession are impressed with a trust, and [the] conversion of such funds is a breach of the trust."

*State of Oklahoma ex rel. Oklahoma Bar Association v. Steger, Okl., 433 P.2d 225 (1966)* involved an attorney who wrongfully converted a $500.00 fee payable to co-counsel. In spite of repeated requests, the respondent attorney did not pay the fee over to the other attorney for some period of time. This Court held there was clear violation of Canon 11 of the Canons of Professional Ethics which essentially is incorporated into Canon 9 of the Code of Professional Responsibility. Also holding that it is improper for an attorney to not promptly pay monies received for a specific purpose is *State of Oklahoma ex rel. Oklahoma Bar Associating v. Dugger, Okl., 385 P.2d 486 (1963).* Both *Steger, supra* and *Dugger, supra,* hold that it is not a defense to a disciplinary action for the Respondent to have later paid the money owing.

Although Smith's use of the proceeds of the $25,000.00 loan deposited in his account for Bell's use and benefit is not the typical conversion case involving funds of a client, it is certainly prohibited conduct.

██ Case law is clear that misconduct by a member of the Bar, in order to justify disciplinary action, need not occur while the relationship of attorney and client exists. *State of Oklahoma ex rel. Oklahoma Bar Association v. Martin, Okl., 410 P.2d 49 (1965).* Article IX, Sec. 6, of the Rules Creating and Controlling the Oklahoma Bar Association, set forth above, provides where money or other property has been entrusted to an attorney for a specific purpose, he must apply it to that purpose. In a written confession, the Respondent admitted he was holding the $25,000.00 in trust, and that he violated the conditions of that trust. Respondent admits the $25,000.00 was deposit-

ed in his personal account and thereafter used for his own personal gain. These acts constitute a clear violation of 5 O.S.1971, Ch. 1, App. 3, DR 1–102, which provides:

"(A) A lawyer shall not:

\* \* \* \* \* \*

(4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

Smith also violated 5 O.S.1971, Ch. 1, App. 3, DR 9–102, relating to preserving the identity of funds and property of a client by requiring that the funds must be deposited in one or more identifiable bank accounts and that the attorney notify his client of the receipt of the funds. The evidence at the hearing before the Trial Authority shows conclusively that Smith did not notify Bell of the receipt of the $25,000.00 which was to be used for Bell's benefit. Further, Smith failed to account to the Oklahoma City co-counsel upon demand, in violation of Art. IX, Sec. 6, supra.

In his testimony, Respondent Smith placed great emphasis upon the fact that he repaid the $25,000.00 before the note was actually called due by the bank in Oklahoma City. This Court has held that when an attorney violates a Canon of Professional Ethics by withholding and using money belonging to a client, the subsequent reimbursement of the money after notification of the client's complaint to the Bar Association does not serve in extenuation of the violation. *State of Oklahoma ex rel. Oklahoma Bar Association v. Kerran, Okl., 495 P.2d 399 (1972); State of Oklahoma ex rel. Oklahoma Bar Association v. Bishop, Okl., 556 P.2d 1276 (1976).*

Regarding the "insufficient funds" check given to the court reporter, and Smith's untrue statement that he had mailed a cashier's check to the reporter, we set forth the following pertinent holding by the California Supreme Court in *Hamilton v. State Bar of California, Cal., 591 P.2d 1254, 1257 (1979)*:

"[[t]he] issuance of such checks manifests an abiding disregard of 'the fundamental rule of ethics—that of common honesty—without which the profession is worse

than valueless in the place it holds in the administration of justice.'" (citations omitted)

There was also evidence of misrepresentations made by Smith throughout the events leading to the Complaint being filed by the Association. Art. IX, Sec. 2, of the Rules Creating and Controlling the Oklahoma Bar Association provides in part that misrepresentation in a response may be grounds for discipline.

Bearing in mind that licensure to practice law is not for the benefit of the individual member of the profession, but rather for the benefit of the public, the primary consideration in determining whether a lawyer is to be disciplined, concerns the welfare of the public and the proper administration of justice. We conclude that disbarment is the appropriate disciplinary action to be taken in this case.

IT IS HEREBY ORDERED that Tom E. Smith be, and he is hereby, Disbarred from the practice of law, his license to practice is hereby revoked and canceled, and his name stricken from the Roll of Attorneys authorized to practice law in the State of Oklahoma.

We approve the finding of the Trial Authority that Respondent is unable to pay the costs.

RESPONDENT DISBARRED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, HARGRAVE and OPALA, JJ., concur.