2010 OK 66

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant**

v.

**Jeffrey Allen MARTIN, Respondent.**

**SCBD No. 5518.**
**OBAD No. 1784.**

Supreme Court of Oklahoma.

Sept. 21, 2010.

Loraine Dillinder Farabow, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Charles F. Alden, III, Alden Leonard & Dabney, Oklahoma City, OK, for Respondent.

OPALA, J.

¶ 1 In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Does the record submitted for our examination provide sufficient evidence for a meaningful *de novo* consideration of the complaint and of its disposition?[1] and (2) Is a public

---

1. The record consists of the Bar's complaint, respondent's response, a transcript of the hearing held before a trial panel of the Professional Responsibility Tribunal, exhibits offered by the

reprimand an appropriate disciplinary sanction for respondent's breach of professional ethics? **We answer both questions in the affirmative.**

# I

## INTRODUCTION TO THE RECORD

¶ 2 The Oklahoma Bar Association (Bar) commenced this disciplinary proceeding on March 6, 2009 against Jeffrey Allen Martin (respondent or Martin), a licensed lawyer, by filing a formal complaint in accordance with the provisions of Rule 6.1 of the Rules Governing Disciplinary Proceedings (RGDP).[2] The complaint alleges in one count violations of the RGDP and of the Oklahoma Rules of

Professional Conduct (ORPC).[3] A trial panel of the Professional Responsibility Tribunal (trial panel or panel) conducted hearings (the PRT hearings) on 14 October 2009 to consider the charges. The trial panel recognized for the record the parties' admitted stipulations (of facts, conclusions of law and agreed disciplinary recommendation). Respondent concedes (by stipulation) that his conduct violates RGDP Rule 1.3[4] and ORPC Rules 5.3,[5] 5.5(b)[6] and 8.4(a).[7] Prior to the PRT hearing the Bar withdrew its reliance on ORPC Rule 8.4(c).[8] Upon completion of the hearing and after consideration of the testimony and exhibits on file, the trial panel issued a report which found that respondent violated RGDP Rule 1.3, ORPC Rules 5.3,

parties, which were admitted into evidence at the hearing, exhibits provided by respondent at deposition, the parties' stipulation (of facts, agreed conclusions of law, concession as to factors to be considered in mitigation of the charges, recommendation of discipline), the trial panel's report and the Bar's application to assess costs against respondent.

2. The Rules Governing Disciplinary Proceedings (RGDP) are in 5 O.S.2001, Ch.1, App. 1–A. The provisions of RGDP Rule 6.1 state:

The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and filed with the Chief Justice of the Supreme Court.

3. The Oklahoma Rules of Professional Conduct (ORPC) were amended in 2007, effective January 1, 2008. The version applicable to this disciplinary proceeding is in 5 O.S.2001, Ch. 1, App. 3–A.

4. The terms of RGDP Rule 1.3, 5 O.S.2001, Ch. 1, App. 1–A, state:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

5. The terms of ORPC Rule 5.3(a) and (b), 5 O.S.2001, Ch. 1, App. 3–A (the rule then in effect) stated in pertinent part:

With respect to a nonlawyer employed or retained by or associated with a lawyer:
(a) a partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the

person's conduct is compatible with the professional obligations of the lawyer;
(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

6. The terms of ORPC Rule 5.5(b), 5 O.S.2001, Ch. 1, App. 3–A (the rule then in effect) stated:

A lawyer shall not: * * *
(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

7. The terms of ORPC Rule 8.4(a), 5 O.S.2001, Ch. 1, App. 3–A (the rule then in effect) stated:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

8. The terms of ORPC Rule 8.4(c), 5 O.S.2001, Ch. 1, App. 3–A (the rule then in effect) stated:

It is professional misconduct for a lawyer to: * * *
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
The complaint alleges that respondent's conduct violated Rule 8.4(c). In the parties' stipulation the Bar moved for the withdrawal of this rule violation. Its request met with no opposition of the trial panel. Neither the stipulation nor the testimony (or exhibits on file) provides clear and convincing evidence that respondent's conduct violated ORPC Rule 8.4(c).
The terms of RGDP Rule 6.12(c), 5 O.S.1991 Ch.1, App.1–A, provide:
To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings.

5.5, 8.4(a), as well as two rules not included in the Bar's complaint or in the parties' stipulations—ORPC Rules 5.4(a)[9] and 5.4(b).[10] The panel recommends that respondent be suspended from the practice of law for six months and that he be directed to pay the costs of this proceeding.

## II

## THE RECORD BEFORE THE COURT PROVIDES SUFFICIENT EVIDENCE FOR A MEANINGFUL *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

¶3 In a bar disciplinary proceeding the court functions as an adjudicative licensing authority that exercises exclusive original as well as final state cognizance.[11] Its jurisdiction rests on the court's constitutionally vested, nondelegable power to regulate the practice of law, including the licensure, ethics, and discipline of this state's legal practitioners.[12] In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct charged, the court conducts a full-scale, nondeferential, *de novo* examination of all relevant facts,[13] in which the conclusions and recommendations of the trial panel are neither binding nor persuasive.[14] In this undertaking we are not restricted by the scope-of-review rules that govern corrective relief on appeal or on certiorari, proceedings in which another tribunal's findings of fact may have to be left undisturbed by adherence to law-imposed standards of deference.[15]

¶4 The court's duty can be discharged only if the trial panel submits to us a complete record of the proceedings.[16] Our

9. The terms of ORPC Rule 5.4(a), 5 O.S.2001, Ch. 1, App. 3–A (the rule then in effect) stated in pertinent part:

   (a) A lawyer or law firm shall not share legal fees with a nonlawyer, * * *

10. The terms of ORPC Rule 5.4(b), 5 O.S.2001, Ch. 1, App. 3–A (the rule then in effect) stated:

   (b) A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.

11. *State ex rel. Okla. Bar Ass'n v. Leigh,* 1996 OK 37, ¶11, 914 P.2d 661, 666; *State ex rel. Okla. Bar Ass'n v. Eakin,* 1995 OK 106, ¶8, 914 P.2d 644, 647; *State ex rel. Okla. Bar Ass'n v. Bolton,* 1994 OK 53, ¶15, 880 P.2d 339, 344; *State ex rel. Okla. Bar Ass'n v. Donnelly,* 1992 OK 164, ¶11, 848 P.2d 543, 545; *State ex rel. Okla. Bar Ass'n v. Raskin,* 1982 OK 39, ¶11, 642 P.2d 262, 265; *In re Integration of State Bar of Oklahoma,* 1939 OK 378, 185 Okla. 505, 95 P.2d 113, 115.

12. *State ex rel. Okla. Bar Ass'n v. Eakin, supra* note 11 at ¶8, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Downing,* 1990 OK 102, ¶12, 804 P.2d 1120, 1122–1123; *State ex rel. Okla. Bar Ass'n v. Raskin, supra* note 11 at ¶11, 642 P.2d at 265–266.

13. *State ex rel. Okla. Bar Ass'n v. Leigh, supra* note 11, at ¶8, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Eakin, supra* note 11 at ¶8, 914 P.2d at 647–648; *State ex rel. Okla. Bar Ass'n v. Lloyd,* 1990 OK 14, ¶8, 787 P.2d 855, 858; *State ex rel. Okla. Bar Ass'n v. Stubblefield,* 1988 OK 141, ¶7, 766 P.2d 979, 982; *State ex rel. Okla. Bar Ass'n v. Cantrell,* 1987 OK 17, ¶1, 734 P.2d 1292, 1293; *State ex rel. Okla. Bar Ass'n v. Brandon,* 1969 OK 28, ¶5, 450 P.2d 824, 827.

Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudicative process must be revisited by our *de novo* consideration. The attribute of nondelegable jurisdiction serves to distinguish the conduct of bar disciplinary functions from trial *de novo*—a retrial in a different court—or even from *de novo* appellate review on the record, which stands for an independent, non-deferential re-examination *of another tribunal's record.*

14. *State ex rel. Okla. Bar Ass'n v. Eakin, supra* note 11 at ¶8, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Raskin, supra* note 11 at ¶11, 642 P.2d at 265. The court's range of options in a disciplinary proceeding is set forth in RGDP Rule 6.15(a), 5 O.S.2001, Ch.1, App. 1–A, which states in pertinent part:

   The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate.

15. *State ex rel. Okla. Bar Ass'n v. Bolton, supra* note 11 at ¶15, 880 P.2d at 344; *State ex rel. Okla. Bar Ass'n v. Eakin, supra* note 11 at ¶8, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Farrant,* 1994 OK 13, ¶7, 867 P.2d 1279, 1284; *Levi v. Mississippi State Bar,* 436 So.2d 781, 782 (Miss.1983).

16. The provisions of RGDP Rule 6.13, 5 O.S. 2001, Ch. 1, App.1–A, state in pertinent part:

   Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report

initial task is to ascertain whether the tendered record is sufficient to permit (1) this court's independent determination of the facts and (2) the performance of its task in fashioning an appropriate discipline. The latter is that which (a) is consistent with the discipline imposed upon other lawyers who have committed similar acts of professional misconduct and (b) avoids the vice of visiting disparate treatment upon the offending lawyer.[17]

¶ 5 Having carefully scrutinized the record submitted to us in this proceeding, we conclude that it is adequate for *de novo* consideration of respondent's alleged professional misconduct.

## III

## THE CHARGES AGAINST RESPONDENT

### Count I

¶ 6 The charges against respondent arise from his failure properly to supervise a non-lawyer employee, Mark Wingo (Wingo). Respondent met Wingo in the spring of 2006 when he came to respondent's law office to inquire about employment. Wingo told him that one of respondent's lawyer friends had referred him and suggested that he seek a job with respondent. At their initial meeting Wingo told respondent that he was on probation after having served time in prison for a "white collar" crime. He informed respondent that although he operated a business in the same building under the name of Legal Defense and Research Center, he needed a job to satisfy the requirements of his probation. Wingo showed respondent his office space and explained that he provided legal support services, such as photocopying, a task called "bates stamping" and other paralegal work.

¶ 7 In May of 2006 respondent agreed to help Wingo by putting him on the law firm's payroll. According to their verbal arrangement, Wingo would call his business the Jeff Martin Research Center (JM Research Center or Center). Wingo was to operate it as a self-sustaining enterprise by earning service fees that were to be used to defray his business costs, including salaries and expenses. Wingo was to run the business as an employee and be responsible for all losses incurred by him. Respondent would be compensated by a percentage of the income generated. There was no agreement to share profits and losses as partners.

¶ 8 Respondent admits that even though the Center was set up under his name, he neither did a background check on Wingo nor took any steps to find out what services, if any, Wingo was actually providing. Neither did respondent have any direct daily contact with Wingo's operations. Initially, when respondent received funds generated by Wingo's business, they were deposited into his general operating account and Wingo's expenses were paid from those funds. Respondent assumed the money generated by Wingo's operations was for work that had been completed. Later respondent set up a separate bank account for Wingo's business in the name of Jeff Martin Research Center (JMRC account). Respondent then transferred the unexpended balance of the Wingo-generated funds out of his operating account into the JMRC account. Respondent made all deposits and wrote all checks on that account. Another person who had been working with Wingo was also placed on respondent's payroll. A payroll would be processed only if there were sufficient funds in the JMRC account. Respondent terminated his business relationship with Wingo in October 2006 after Wingo cashed a check that he had been instructed to hold until there were

---

which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of

the proceeding, and all exhibits offered thereat. . . .

17. *State ex rel. Okla. Bar Ass'n v. Eakin, supra* note 11 at ¶ 9, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Bolton, supra* note 11 at ¶ 16, 880 P.2d at 345; *State ex rel. Okla. Bar Ass'n v. Perceful,* 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

enough funds in the JMRC account to cover it.

## The Westcotts' Grievance

¶ 9 The grievance by the Westcotts arises from services allegedly provided by Wingo and the Jeff Martin Research Center to David A. Westcott and his parents, Wayman and Jean Westcott (Westcotts). Wingo met David Westcott while they were both incarcerated in the same federal prison. Based upon Wingo's representations, the Westcotts agreed to hire him upon his release from prison to assist David Westcott in the filing of a request for postconviction relief and a petition for writ of certiorari from the United States Supreme Court. From January of 2006 through April of 2007 the Westcotts paid Wingo approximately $19,000 for services he claimed to be performing. They initially paid Wingo $5,000 of this amount before Wingo had established a business relationship with respondent. After he was put on respondent's payroll Wingo misrepresented to the Westcott family that he was working on their son's case with respondent, who, as their son's lawyer, would argue the matter on appeal. Wingo induced Wayman Westcott (a) to sign a contract, without respondent's knowledge or consent, for legal services to be provided by the JM Research Center on behalf of David Westcott [18] and (b) to pay a $12,000 fee, leaving a balance of $6,500 payable in monthly installments of $200. In June 2006 the Westcotts wrote a $12,000 check payable to Jeff Martin and made ten monthly installment payments starting in July 2006 through April 2007.[19] Respondent continued to deposit the Westcotts' checks after his relationship with Wingo had been terminated in October 2006.

¶ 10 Respondent claimed it was not until six months after Wingo's termination that he first learned of Wingo's unauthorized activities and misrepresentations that resulted in the Westcotts' grievance.[20] Numerous e-mails were then exchanged between respondent, Wingo and the Westcotts. Respondent made several attempts to assist the Westcotts. **Respondent's malpractice carrier made full restitution to the Westcotts and respondent himself paid the $5,000 deductible amount of his policy.**

## IV

## A LAWYER'S DUTY TO SUPERVISE LAY PERSONNEL

■ ¶ 11 The Bar charged respondent with failure to supervise a nonlawyer employee, who was allowed to use respondent's name to operate a business that provided legal support and research services.

■ ¶ 12 A lawyer is duty-bound to supervise the work done by lay personnel and stands ultimately responsible for work done by the entire nonlawyer staff.[21] The

18. According to the June 14, 2006 agreement, the JM Research Center would initiate the following legal services: "1. FEDERAL CRIMINAL APPEAL 2. SUPREME COURT FILING 3. DISTRICT COURT TRANSCRIPT ANALYSIS".

19. Nine of the monthly checks (totaling $1,800) were made payable to Jeff Martin & Associates and endorsed and deposited by respondent. He received a $200 check for the months of July–December 2006 and for January, March and April of 2007. Wingo received a $200 check in February 2007 from the Westcotts, payable to the Legal Defense and Research Center.

20. The trial panel found that respondent's denial of knowledge of the relationship between Wingo and the Westcotts lacks credibility in light of certain exhibits in the record—(a) the June 14, 2006 agreement between Jeff Martin & Associates and the Westcotts, (b) a running account log of the balance the Westcotts owed to Jeff Martin & Associates and (c) a March 19, 2007 collection letter from respondent's law office to the Westcotts for the balance owed. We do not agree. Neither the parties' stipulation nor the exhibits on file on file provide clear and convincing proof that respondent knew anything about the actual support services that Wingo provided to the Westcotts.

21. *State ex rel. Okl. Bar Ass'n v. Mayes*, 1999 OK 9, ¶ 25, 977 P.2d 1073, 1082; *State ex rel. Okla. Bar Ass'n v. Cummings*, 1993 OK 127, ¶ 25, 863 P.2d 1164, 1173; *State ex rel. Okl. Bar Ass'n v. Braswell*, 1983 OK 63, ¶ 14, 663 P.2d 1228, 1231–32.

See Restatement (Third) of The Law Governing Lawyers § 11, A Lawyer's Duty of Supervision, Comment (f). "In several important senses, all lawyers within a law **firm bear direct responsibility for nonlawyer personnel.** First, ... every lawyer in the firm must take reasonable steps to ensure that the firm has in effect measures giving reasonable assurance that the conduct of all non-

work of unlicensed personnel for a lawyer is done by them as agents of the lawyer who employs them.[22] It is the lawyer who must exercise complete, though indirect, professional control over the actions of the employees. A lawyer has the ultimate responsibility to ensure that the internal processing system of his office is in compliance with his professional obligations. A licensed legal professional who fails properly to supervise unlicensed personnel is guilty of dereliction of duty. ORPC Rule 5.3.[23] Violating the Rules of Professional Conduct through the acts performed by another is professional misconduct under ORPC Rule 8.4(a).[24]

¶ 13 Respondent's utter failure to supervise any of Wingo's work activities not only enabled Wingo to misrepresent respondent's individual involvement in the case but also to engage in the unauthorized practice of law by

performing legal services in the form of legal research, the alleged preparation of a motion for postconviction relief and of a petition for writ of certiorari to the United States Supreme Court without proper supervision by a licensed lawyer. Respondent's dereliction violated ORPC Rule 5.5(b), which provides that "a lawyer shall not . . . assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law." [25]

¶ 14 The vicarious [26] responsibility of a lawyer subjects that professional both to private-law (civil) liability [27] as well as to the Bar's disciplinary process of public law.[28] **Today's opinion deals exclusively with the respondent's breach of his public-law duty as a member of the Bar.** A disciplinary dereliction that comes under the rubric of a

lawyers in the firm is compatible with the professional obligations of the lawyer. . . . Because the obligation is to make reasonable efforts, lack of knowledge on the part of the lawyer will not constitute a defense if under the circumstances the lawyer either failed to ensure the presence of measures to prevent misconduct or failed to make reasonable efforts to see that a supervised nonlawyer complied with those measures and otherwise conformed the person's conduct to the professional obligations of the lawyer." *Id* (emphasis added).

22. Under the doctrine of *respondeat superior* a principal or employer is generally held liable for those acts of an agent or employee which fall within the latter's authority. *Qui facit per alium facit per se* (the act of the employee is the act of the employer). This rule rests on the premise that, when exercising delegated authority, the employee stands under the complete control of the employer. Black's Law Dictionary at 1124 (5th ed.1979)(the acts of the agent are the acts of the principal). In *Sisk v. J.B. Hunt Transport, Inc.*, 2003 OK 69, ¶ 7, n. 15, 81 P.3d 55, the court observed: "Legal historians do not agree on the origins of the modern doctrine of vicarious accountability in Anglo–American law. This liability is described by a fictitious identification of servant with master—*respondeat superior* (let the superior answer) or of agent with principal—*qui facit per alium facit per se* (he who acts through another acts for himself). For a brief but profound discussion of the doctrine's historical antecedents see Fowler V. Harper and James Fleming, Jr., Law of Torts, § 26.2, at 1364–66 (1956) and Stuart M. Speise, Charles F. Krause, and Alfred W. Gans, The American Law of Torts § 4.2, at 533–37 (1983)." *See also Anderson v. Eichner*, 1994 OK 136, 890 P.2d 1329, n. 23; *North Side State Bank v. Board of County Com'rs*

*of Tulsa County*, 1994 OK 34, 894 P.2d 1046, 1051.

23. For the terms of ORPC Rule 5.3, see *supra* note 5.

24. For the terms of ORPC Rule 8.4(a) see *supra* note 7.

25. For the terms of ORPC Rule 5.5(b), see *supra* note 6.

26. The term "vicarious" means "filling the place of another". Chambers's Twentieth Century Dictionary 1098 (London & Edinburgh 1943).

27. "(3) A principal of a law firm organized other than as a general partnership without limited liability as authorized by law is vicariously liable for the acts of another principal or employee of the firm to the extent provided by law." Restatement (Third) of The Law Governing Lawyers § 58(3)(Vicarious Liability). Section 58 "sets forth the vicarious liability of a law firm and its principals." *Id.*, Comment (a). The "vicarious liability of law firms and principals of traditional general partnerships results from the principles of *respondeat superior* or enterprise liability. See Revised Uniform Partnership Act §§ 305 and 306 (1993); Restatement Second, Agency, Chapter 7; Uniform Partnership Act §§ 13 and 14; § 26, Comment b; § 27, Comment b; cf. Uniform Partnership Act § 102(f) (partner's knowledge attributed to other partners, unless partner committed or consented to fraud on partnership)." Restatement (Third) of The Law Governing Lawyers § 58, Rationale, Comment (b).

28. See Restatement (Third) of The Law Governing Lawyers § 11, A Lawyer's Duty of Supervision, Comment (f), *supra* note 21.

lawyer's **breach of vicarious professional responsibility** may not be treated as less serious than one of the same nature which was brought to enforce a practitioner's personal disciplinary responsibility by his own act or omission. Both breaches must be dealt with as being of equal seriousness. The discipline to be imposed for these derelictions should not vary one iota if the facts are identical. We must hence look at the respondent's breach in the same light as we would if this case were here to enforce his own disciplinary offense rather than his vicarious responsibility for breach by a third party acting as respondent's agent.[29] In short, although the respondent was not the actor, the act in suit is imputed in law to his own doing. The gravity of the breach is equal to that which would apply if committed individually by the respondent's own act or omission.

¶ 15 Simply and concisely stated, **a lawyer's vicarious public-law liability, in the context of a disciplinary bar proceeding, means that all licensed lawyers are fully and absolutely accountable for all breaches of professional ethics committed** not only by fellow lawyers in the law firm, but also **by those persons who are unlicensed or lay employees of a lawyer or of an association of lawyers in a single firm, regardless of the firm's name or of its precise legal entity.**

¶ 16 The record shows that respondent fell woefully short of his **obligation to supervise a nonlawyer employee** in the operation of a business that provided legal support and research services under respondent's name **and to make reasonable efforts to ensure that Wingo's conduct was compatible with the respondent's professional obligations as a licensed practitioner.** By his utter dereliction of duty respondent made the offense possible. He gave the offender a home from which to harm innocent people. While respondent may be an entirely innocent victim of a designing employee, that does not re-

duce his culpability in law one iota. He is vicariously liable in disciplinary responsibility for all the misdeeds of his unlicensed employee which went unnoticed until the victim complained.

## Rule 5.4(a) and (b) Violation

¶ 17 The trial panel found that respondent's conduct violated two additional rules—ORPC Rule 5.4(a) and (b).[30] Subsection (a) **prohibits a lawyer or law firm from sharing legal fees** with a nonlawyer and subsection (b) **prohibits a lawyer from entering into a partnership with a nonlawyer** if any one of the partnership's activities **constitutes the practice of law.**

¶ 18 In support of the rule's violation, the trial panel found that (a) respondent had formed the Jeff Martin Research Center as a repository for funds collected by Wingo and (b) respondent entered into an agreement with Wingo to share fees generated by Wingo's "rendering of legal services, *albeit* unauthorized."

¶ 19 We disagree with the trial panel's conclusion that respondent violated ORPC Rule 5.4(a) and (b). The complaint does not allege facts and the record fails to establish, by stipulation or otherwise, that respondent shared legal fees with Wingo from any of his clients' cases. Under the circumstances here shown the Westcotts cannot be regarded as respondent's clients for disciplinary purposes. Neither is there any indication in the record that respondent had entered into a partnership with Wingo which included activities that constituted the practice of law. Respondent's verbal arrangement with Wingo dealt with a business that was to be separate from his law practice. It was respondent's professional dereliction in failing to supervise a nonlawyer employee that provided the opportunity for Wingo to engage independently in pure practice of law.

---

**29.** Under the doctrine of *respondeat superior* a principal or employer is generally held liable for those acts of an agent or employee which fall within the latter's authority. *State ex rel Oklahoma Bar Association v. Taylor*, 2000 OK 35, ¶ 19, n. 31, 4 P.3d 1242, 1251.

**30.** For the pertinent terms of ORPC Rule 5.4(a) and (b), see *supra* notes 9 and 10.

## V

### CONCESSION AS TO AVAILABLE MITIGATION

¶ 20 Mitigating circumstances may be considered in assessing the appropriate quantum of discipline.[31] The trial panel report as well as the record reveal factors to be weighed for purposes of mitigation. The respondent (1) has been practicing law since April 30, 1993 and has never been disciplined for professional misconduct, (2) has readily acknowledged his professional misconduct, (3) is remorseful and has accepted full responsibility for his actions, (4) has cooperated fully and completely in the Bar's investigation of the grievance; (5) has caused no financial loss to any client or third party as a result of his professional misconduct, (6) made full restitution to the Westcotts[32] and (7) has implemented new office procedures designed to help him better supervise in the future his office staff and to manage his caseload.

¶ 21 We take today all these factors into account when fashioning the appropriate measure of discipline to be imposed on the respondent for the derelictions here in suit.

## VI

### DISCIPLINE TO BE IMPOSED

¶ 22 A government's license to practice law is conferred not for the benefit of the individual licensee, but rather for that of the public.[33] The permissible norms of lawyers' professional conduct constitute public law. It is enforceable by the Oklahoma Supreme Court in its capacity as the profession's central licensing authority. The disciplinary process, including the imposition of a sanction, serves a very important public interest. It is designed not to punish the delinquent lawyer, but to safeguard the interests of the public, those of the judiciary as well as of the legal profession.[34] Disciplinary sanctions serve not only to deter the offending lawyer from committing similar acts in the future, but also operate to put other practitioners on notice that departures from ethical norms will not be tolerated.[35] The measure of discipline to be imposed upon an offending lawyer should always be consistent with the discipline visited upon other practitioners for similar acts or omissions which constitute professional misconduct.[36]

### A.

¶ 23 The trial panel has recommended that respondent be suspended from the practice of law for six months. The panel considered two aggravating factors in making its determination of the appropriate discipline to be imposed.

¶ 24 *The first factor.* In the course of this disciplinary proceeding it came to the attention of the trial panel that on a prior occasion respondent had experienced adverse consequences of neglect when another lawyer in his firm missed the passing of limitations period in a previous, entirely separate case. That consequence of neglect met with the respondent's restitution to the satisfaction of the harmed client.

¶ 25 Factor one added to the panel's accusatory arsenal a matter that is *res inter alios*

---

**31.** *State ex rel. Okla. Bar Ass'n v. Combs,* 2007 OK 65, ¶ 35, 175 P.3d 340, 351; *State ex rel. Okla. Bar Ass'n v. Giger,* 2001 OK 96, ¶ 8, 37 P.3d 856, 863–64.

**32.** We note that restitution (or full compensation for a person's loss from a lawyer's disciplinary dereliction) is just a circumstance that militates in favor of a milder discipline but not in favor of exoneration from disciplinary responsibility or from the discipline to be imposed. The use of lenient discipline for the purpose of encouraging restitution cannot be sanctioned because it conflicts with the paramount goal of preserving public confidence in the entire bar. *State ex rel. Okla. Bar Ass'n v. Raskin, supra* note 11 at 267.

**33.** *State ex rel. Okla. Bar Ass'n v. Giger, supra* note 31, at ¶ 18, 37 P.3d at 863–864.

**34.** *State ex rel. Okla. Bar Ass'n v. Lowe,* 1982 OK 20, ¶ 19, 640 P.2d 1361, 1363; *State ex rel. Okla. Bar Ass'n v. Smith,* 1980 OK 126, ¶ 21, 615 P.2d 1014, 1018.

**35.** *State ex rel. Okla. Bar Ass'n v. Cummings, supra* note 11, at ¶ 29, 863 P.2d at 1174; *State ex rel. Okla. Bar Ass'n v. Hall,* 1977 OK 117, ¶ 12, 567 P.2d 975, 978.

**36.** *State ex rel Okla. Bar Ass'n v. Giger, supra* note 31.

*acta,* one that is entirely foreign to the Bar's allegations in this disciplinary proceeding.[37] That negligent occurrence dealt with a completely different client. No grievance was ever filed against the respondent and he was never charged with a rule violation for this negligence. We will not consider this attempted and improper panel's addition in assessing the appropriate quantum of discipline for respondent's unprofessional conduct.

¶ 26 *The second factor.* Respondent admitted that he deposited into his operating account monies paid by the Westcotts without first determining what the money was for and whether it was for work already performed or not yet earned. The trial panel concluded that at the time the respondent received the Westcotts' money, "the work had not yet been done." The panel based its views on an "e-mail exchange" and the "facts found" by the trial judge in "David Westcott's case in the United States District Court for the Northern District of Oklahoma."[38] According to the trial panel "the money should have been deposited, if at all, in respondent's trust account."

¶ 27 There is no clear and convincing evidentiary support for the panel's *sua sponte* consideration of this factor for enhancement of discipline. The panel has provided no specific language from the e-mail exchange between respondent, Wingo, David Westcott and his parents (and we can find none) that reveals respondent received the Westcott money from Wingo before the work was done.[39] There is simply nothing in the e-mail exchange to indicate that this had in fact occurred. Furthermore, there is no finding of fact in the federal court's opinion to support the trial panel's conclusion. The federal trial judge merely repeated David Westcott's allegation that, "he hired attorney Jeff Martin to file a petition for a writ of certiorari with the United States Supreme Court, and that Martin failed to do so, despite being paid." Assuming *arguendo* there had been such a finding of fact, it would be inadmissible here. That case dealt with a postconviction motion in a criminal case brought in a federal court. It had nothing to do with any party to this disciplinary proceeding. Any finding made therein cannot be relied upon here, but must be proven by clear and convincing evidence in this case.

¶ 28 In short, clear and convincing evidence does not support the trial panel's *sua sponte* consideration of these aggravating circumstances for the purpose of enhancing respondent's discipline.

**B.**

¶ 29 The parties hereto stipulated in the disciplinary proceedings and now urge

37. Black's Law Dictionary defines *res inter alios acta* as "a thing done between others." *Id.,* at 770 (4th ed.1968). According to Black's "[i]n the law of evidence, a thing or event which occurs at a time different from the time in issue is generally not admissible to prove what occurred at the time in issue. Also events which involve those not parties to an action are generally not admissible because they are immaterial and commonly not relevant." *Id.,* at 1310 (6th ed.1990). See in this connection *Harrod v. Sanders,* 1929 OK 228, ¶ 33, 278 P. 1102, 1105. "*Res inter alios acta* have from early times been deemed incompetent evidence. * * * [T]he commission of an act charged against a person may not be proved by showing a like previous act to have been committed by the same person." *Id.* (quoting 10 R.C.L. 937).

38. *U.S. v. Westcott,* 2008 WL 4925768 at *2 (N.D.Okla., 2008). That case dealt with David Westcott's *pro se* motion to vacate, set aside, or correct his sentence (pursuant to 28 U.S.C. § 2255) based on ineffective trial and appellate counsel.

39. The Westcotts' grievance states that Wingo had advised them that he could help their son in his federal appeal by filing a Petition for Writ of Certiorari to the U.S. Supreme Court and (b) after the Court "rejected the writ" the Westcotts learned the "the writ was filed pro se." Wingo's May 1, 2007 e-mail to respondent states that he had "filed a petition to the Supreme Court, and a [§] 2255 ineffective assistance claim." Wayman Westcott's August 29, 2007 e-mail to respondent states that Wingo is "working on David's [§] 2255 brief and says he will have it finished soon, but he has said that for months." Wayman Westcott's response to Wingo's October 17, 2007 e-mail states: "I still need a copy of what you sent to the Supreme Court after they sent your first brief back." Respondent's October 30, 2007 e-mail to Wingo states that he received a letter from David Westcott who informed him that he was "very upset" with Wingo and the work he did for him and (2) that in his opinion the work he did "was not worth the money" he charged.

before this court that a private reprimand is the appropriate sanction for respondent's acts of professional misconduct.[40] We disagree and on due consideration of the entire record impose a public reprimand.

¶ 30 Laxity in supervising persons who work under a lawyer's control is not likely to be effectively deterred unless the offending lawyer's public reputation is affected and its harmful consequences become economically much too costly to bear. Licensed lawyers' responsibility for derelictions committed by lay persons acting as their agents must not be watered down, diminished or ignored. Its prompt, rigid and faithful enforcement is absolutely necessary to guard against serious professional abuse of clients. Moreover, breach of vicarious responsibility is not to be treated as a lesser offense for which milder discipline should be the offender's due. The seriousness of an act or of failure to act is rather to be measured by the quantum of harm that was inflicted. When guided by this rationale in choosing the discipline to be imposed we do not stop to pause even for a short moment to consider whether the responsibility of the offender that was breached may be regarded as personal or vicarious.

¶ 31 Public reprimand should be viewed as an adequate measure of discipline where the harm dealt the client has been fully compensated and the respondent actively assisted the Bar counsel in the investigation and prosecution of the complaint from the very inception and through the disciplinary Bar process.

¶ 32 Our independent record review and the combination of the delineated factors lead us today to conclude the appropriate measure of discipline to be fashioned for respondent's breach of professional discipline is a public reprimand combined with imposition of liability for costs incurred in this proceeding.

## VII

### SUMMARY

¶ 33 In sum, the record bears clear and convincing proof that respondent's partic-

ipation in improper conduct violated the rules that govern a practitioner's professional responsibility. After a thorough review of the record and upon due recognition of all the factors tendered to us in mitigation,

¶ 34 **RESPONDENT IS ORDERED DISCIPLINED (1) BY A PUBLIC REPRIMAND AND (2) BY IMPOSITION OF COSTS OF THIS PROCEEDING IN THE AMOUNT OF $925.79, WHOSE PAYMENT SHALL BE DUE NOT LATER THAN NINETY DAYS AFTER THIS OPINION BECOMES FINAL.**

¶ 35 EDMONDSON, C.J., and HARGRAVE, OPALA, KAUGER, WINCHESTER, COLBERT and REIF, JJ., concur.

¶ 36 WATT, J., concurs in part and dissents in part.

¶ 37 TAYLOR, V.C.J., dissenting.

I would suspend this respondent from the practice of law.

---

40. Both parties object to the trial panel's recommended quantum of disciplinary sanction, believing that it needlessly exceeds that stipulated before the trial panel.