2017 OK 30

**STATE of Oklahoma, EX REL. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Chad Ward MOODY, Respondent.**

**Case Number: SCBD-6420**

Supreme Court of Oklahoma.

Decided: 04/11/2017

Loraine Dillinger Farabow, Oklahoma Bar Association, Oklahoma City, Oklahoma, for complainant.

Chad Ward Moody, respondent, pro se.

Winchester, J.

¶ 1 The complainant, Oklahoma Bar Association, filed its complaint against the respondent, Chad Ward Moody, pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP),[1] alleging violations of Rule 1.3 (RGDP)[2] and Rule 8.4(d) of the Oklahoma Rules of Professional Conduct (ORPC).[3] The Trial Panel heard this disciplinary matter, found the respondent had violated ORPC 8.4(d) and his actions warranted discipline. The Panel·recommended that the respondent be publically censured.

1. Rule 6. Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal, 5 O.S.2011, ch. 1, app. 1-A, Rules Governing Disciplinary Proceedings.

2. Rule 1.3, 5 O.S.2011, ch. 1, app. 1-A, RGDP, provides "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemean-

## I. FACTS

¶ 2 Nichalas Frank hired the respondent in November of 2015 to represent him in three (3) criminal cases pending in Oklahoma County District Court. Mr. Frank's grandfather paid the respondent the five-hundred dollar ($ 500) retainer fee required to obtain his services, and Mr. Frank was to pay an additional total of $ 4,000.00 to the respondent in six monthly payments.[4] Frank, however, failed to make any further payments.

¶ 3 On March 15, 2016, the respondent learned during a staff meeting that Mr. Frank had not made any additional payments for attorney fees. The respondent reacted to this by telephoning Frank and, in front of his staff, leaving two messages containing expletives and threats. We will address the content of the messages later in this opinion.

¶ 4 After receiving the respondent's voicemail messages, Frank contacted a local Oklahoma City TV news station. In an interview with the station he stated he feared for his life because the respondent was pretty powerful, and "I'm pretty sure he can do what he wants to do at any moment." The TV station aired the news story on March 16, 2016, and played bleep-censored audio of both voicemail messages left by the respondent. He refused to be interviewed and did not comment on the allegations.

¶ 5 On March 17, 2016, Mr. Frank filed a grievance with the Oklahoma Bar Association regarding the respondent's conduct. That same day the respondent filed motions to withdraw from Frank's cases and was authorized to do so by the District Court on March 21, 2016.

or, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

3. Rule 8.4(d), 5 O.S.2011, ch. 1, app. 3-A, provides "It is professional misconduct for a lawyer to ... (d) engage in conduct that is prejudicial to the administration of justice...."

4. After being retained, the respondent appeared on Frank's behalf and continued the cases that were pending in the state district court.

¶ 6 In his written response to Frank's grievance, the respondent advised he had appeared in court on Frank's behalf and continued the cases because he was not getting paid, and he was trying to consolidate them before the same judge. The respondent went on to state that when he learned Frank had not paid the fee promised, he left the two voicemails, "in an attempt to get Frank to pay him so that he would not have to withdraw." In his written response, the respondent also stated that Frank

"... needed me to get his attention and I did. ... I simply spoke to him in words he understood. My communication was directed to him personally, and was intended to be private in nature. Sometimes communications with difficult drug addicted clients has [sic] to be blunt and straight forward to impress upon them the reality of their situation."

¶ 7 On July 13, 2016, the Bar Association filed a formal Complaint, at the Office of the Chief Justice of the Oklahoma Supreme Court. The Complaint alleged the respondent violated his professional duties under Rule 8.4(d) (ORPC), and Rule 1.3 (RGDP).

## II. STANDARD OF REVIEW

¶ 8 In disciplinary proceedings this Court acts as a licensing court in the exercise of our exclusive jurisdiction. *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, ¶ 3, 127 P.3d 600, 602. Our review of the evidence is *de novo* in determining if the Bar has proven its allegations of misconduct by clear and convincing evidence; the Trial Panel's recommendations are neither binding nor persuasive. *State, ex rel. Oklahoma Bar Ass'n v. Anderson*, 2005 OK 9, ¶ 15, 109 P.3d 326, 330. This Court's responsibility is not to punish an attorney, but to assess the continued fitness to practice law, and to safeguard the interests of the public, the courts, and the legal profession. *State ex rel. Oklahoma Bar Ass'n v. Wilburn*, 2006 OK 50, ¶ 3, 142 P.3d 420, 422.

## III. DISCUSSION

¶ 9 The Bar Association alleges that the respondent violated Rule 8.4(d) ORPC, which states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice," and Rule 1.3 RGDP, which subjects an attorney to discipline for any acts by that attorney that are contrary to prescribed standards of conduct, and "which would reasonably be found to bring discredit upon the legal profession."

¶ 10 The Bar Association asserts that the respondent's attempt to get his client to pay his fee by abuse and threats constitutes conduct prejudicial to the administration of justice in violation of ORPC 8.4(d). This Court has acknowledged the vagueness that Rule 8.4(d) presents, but has upheld the rule as "sufficiently definite for the purpose of disciplinary proceedings." *Oklahoma Bar Ass'n v. Bourne*, 1994 OK 78, 880 P.2d 360, 361. To establish a violation of ORPC 8.4(d), the "interference contemplated must be serious" and must include some element of "deceit, dishonesty, misrepresentation, criminality, sexual misbehavior or other morally reprehensible conduct." *State, ex rel. Oklahoma Bar Ass'n v. Minter*, 2001 OK 69, ¶ 24, 37 P.3d 763, 774, (citing *Bourne* at 8).

¶ 11 The respondent objects to the Trial Panel's characterization of his conduct as "morally reprehensible." He believes the conduct involved merely offensive behavior and insults. He argues that the Trial Panel has expanded "morally reprehensible" beyond deceit, dishonesty, misrepresentation, criminality, and sexual misbehavior. While he appears to be focused on his choice of expletives, we are focused on the subject matter of the two recorded messages.

¶ 12 The respondent writes that "Swear words are the exclamation marks of spoken language." Modern dictionaries describe the words used by the respondent as offensive and vulgar. Because words in dictionaries are the result of substantial research, we accept that they accurately reflect the current public opinion of the words the respondent chose to use. We delete these expletives in quoting his messages.

The respondent left this message at 10:31 AM:

"Mr. Frank, this is Chad Moody. It's not your [deleted]. It's not your piece of [deleted] that you step on. It's not your slave. It's not your [deleted]. It's Chad Moody who works for you, but you won't [deleted] pay me! So why don't you come to my office, because I'm having a frustrating day, and I would like to really beat the [deleted] out of somebody and that way, you can at least make yourself somewhat useful to the human race. [Deleted] pay me [deleted]!"

Again, at 10:33 AM, the respondent telephoned Frank, and in front of his staff, left this message:

"Mr. Frank, by the way, Chad Moody, calling you back, and at this point, I really do think you should probably find other counsel because I'm to the point of wanting to see you go to prison and that's not a good equation. It gives me a horrible conflict of interest. So I'm letting you know I've got this conflict of interest because I would love to see your sorry [deleted] in prison because you're using me like your [deleted]."

¶ 13 The facts show that the phone calls immediately followed information from the respondent's staff informing him that Mr. Frank had not paid the attorney fees he had promised to pay. The respondent's subsequent verbal abuse and threats were a coercive attempt to intimidate Mr. Frank into paying. The substance of the messages does not support the respondent's explanations that he was trying to shock Mr. Frank into following the respondent's recommendations to him so he would receive a lighter sentence. The respondent's assertion that his choice of language was in his client's best interest and the language is protected by the First Amendment's Freedom of Speech Clause, found in the Constitution of the United States, is merely unpersuasive rationalization for rash acts.

¶ 14 The recorded tirade reveals that the respondent no longer intended to represent his client, he only wanted his fees to be paid. He is entitled to his fees, and as an attorney, he should know bullying and threats are not acceptable behavior for a professional who has sworn to uphold the rule of law. The courts are open to protect breaches of contract. Of all people, a lawyer should know that.

¶ 15 He asserts that he had no notice that the messages he left could violate Rule 8.4(d). As he must know, our society does not allow debt collectors to use abusive tactics such as threats of violence and name-calling to collect debts. 15 U.S.C.A. 1692d (1) and (2).[5] Although those laws were written to control abuse from professional debt collectors and not lawyers whose practice is criminal law, Congress enacted the statute it believed would benefit and protect the public from professionals who misuse their positions. The respondent surely realizes such behavior for a lawyer would be considered by the public to be "contrary to prescribed standards of conduct."

■ ¶ 16 We are concerned that the respondent does not appear to realize that his use of intimidation and threats to collect a debt due him is unacceptable behavior for an attorney. He shows no remorse, no embarrassment for his actions. He even defends the actions as protected speech. He testifies that his client deserved it for lying to him about paying the attorney fees. From his own testimony, he has asserted that such behavior is not his ordinary course of dealing with the clientele he has chosen to represent, that is, those who are accused of violating drug laws. Neither his two attorney witnesses, nor a member of his staff, who also testified at his hearing, were willing to testify that such invective should be considered acceptable behavior for an attorney. His actions violate ORPC 8.4(d), and RGDP 1.3. Justice cannot be administered by taking the

---

5. 15 U.S.C.A. 1692d (1)and(2) provide "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person. (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader...."

position of a foe, by belittling one's own client, nor by informing the client that his lawyer wants to physically beat him and then see him go to prison. In other words, the respondent's conduct is prejudicial to the administration of justice. Such action also brings discredit upon the legal profession.

¶ 17 In mitigation, the facts support this is not the respondent's typical method of handling his clients. He has not been disciplined by this Court before. We expect that the respondent will not repeat his behavior. There is no evidence before this Court that Mr. Frank suffered any legal harm regarding his criminal cases as the result of the respondent's withdrawal as Mr. Frank's attorney.

## IV.  CONCLUSION

¶ 18 Complainant has established by clear and convincing evidence that the respondent violated Rule 8.4(d) of the Oklahoma Rules of Professional Conduct, and Rule 1.3 of the Rules Governing Disciplinary Proceedings, and we find that his discipline should be a public reprimand and payment of the costs of these proceedings in the amount of $ 2,498.75, within 90 days of the publication of this opinion. IT IS SO ORDERED.

THE RESPONDENT IS REPRIMANDED AND ORDERED TO PAY COSTS.

GURICH, V.C.J., WATT, WINCHESTER, EDMONDSON, REIF, WYRICK, JJ., concur.

KAUGER, COLBERT, JJ., concur in result.

COMBS, C.J., not voting.