OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. JACK

 

 
 

 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. JACK
2021 OK 1
Case Number: SCBD-6896
Decided: 01/19/2021
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2021 OK 1, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel., OKLAHOMA BAR ASSOCIATION, Complaint,
v.
TARA K. JACK, Respondent.
BAR DISCIPLINARY PROCEEDING
Â¶0 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association, charged Respondent, Tara K. Jack, with three counts of professional misconduct, all involving her failure to properly supervise nonlawyer employees under her direct supervision and allowing them to engage in the unauthorized practice of law. The Professional Responsibility Tribunal recommended Respondent be publicly censured. We hold there is clear and convincing evidence that the totality of Respondent's conduct warrants public censure. Respondent is ordered to pay the costs as herein provided within ninety days after this opinion becomes final.
RESPONDENT PUBLICLY CENSURED AND ORDERED TO PAY COSTS
Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.
Allen M. Smallwood, Smallwood Law Office, Tulsa, Oklahoma, for Respondent.
ROWE, J.:
Â¶1 Complainant, State of Oklahoma ex rel. Oklahoma Bar Association began disciplinary proceedings pursuant to Rule 6, Rules Governing Disciplinary Proceedings ("RGDP"), 5 O.S.2011 ch. 1, app. 1-A, alleging three counts of professional misconduct against Respondent, Tara K. Jack. Respondent is an active member of the Oklahoma Bar Association and is currently in good standing. Complainant's allegations arise from Respondent's allowance of unlicensed prosecutors under her direct supervision at the Tulsa County District Attorney's office to engage in the unauthorized practice of law. Complainant alleges Respondent's actions are in violation of the Oklahoma Rules of Professional Conduct ("ORPC"), 5 O.S.2011, ch. 1, app. 3-A, and the RGDP and are cause for professional discipline.
Procedural History
Â¶2 Complainant filed its formal Complaint with the Office of the Chief Justice on January 23, 2020, which contained three counts of alleged misconduct related to Respondent's supervision of five individuals engaged in the unauthorized practice of law. Respondent filed an answer to the Complaint on February 11, 2020.
Â¶3 On March 11, 2020, the Professional Responsibility Tribunal ("Tribunal") held a hearing on the allegations contained in the Complaint, pursuant to Rule 6, RGDP. On June 5, 2020, the Tribunal filed its report wherein it found that Complainant had established by clear and convincing evidence that Respondent violated Rules 5.3(b), 5.3(c), 5.5(a), 8.4(a), and 8.4(d), ORPC, and Rule 1.3, RGDP. The Tribunal unanimously recommended that Respondent be publicly censured.
Standard of Review
Â¶4 This Court possesses exclusive jurisdiction in Bar Association disciplinary proceedings. State ex rel. Okla. Bar Ass'n v. Holden, 1995 OK 25, Â¶10, 895 P.2d 707, 711. We review the evidence de novo to determine whether the allegations of misconduct have been established by clear and convincing evidence. Rule 6.12(c), RGDP; State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 26, Â¶7, 23 P.3d 268, 272. Clear and convincing evidence is "that measure or degree of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." State ex rel. Okla. Bar Ass'n v. Green, 1997 OK 39, Â¶5, 936 P.3d 947, 949.
Â¶5 Our goals in disciplinary proceedings are to protect the interests of the public and to preserve the integrity of the courts and the legal profession, not to punish attorneys. State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, Â¶15, 212 P.3d 1186, 1192. We consider the discipline previously imposed for similar professional misconduct to ensure that discipline is administered uniformly. Id. at Â¶16, 212 P.3d at 1192 (citing State ex rel. Okla. Bar Ass'n v. Doris, 1999 OK 94, Â¶37, 991 P.2d 1015, 1025). Discipline, however, is decided on a case-by-case basis to account for differences in the offending conduct and mitigating circumstances. Id.
Background
Â¶6 Throughout the summer and fall of 2018, Tulsa County District Attorney Steve Kunzweiler was engaged in a contested reelection campaign. Concerns over a change in leadership, and consequently job security related to the campaign, prompted a number of assistant district attorneys to seek employment elsewhere. This exodus left the Tulsa County District Attorney's office shorthanded and forced the remaining assistant district attorneys to take on additional responsibilities. At that time, Respondent was employed as an Assistant District Attorney and serving as the Director of the Traffic and Misdemeanor Division. In that role, Respondent had direct supervisory authority of lawyer and non-lawyer employees in the division.
I. Count I: The Sweeney Grievance
Â¶7 Among the employees under Respondent's supervision was Kelly Sweeney. Sweeney was hired as a Provisional Assistant District Attorney by the Tulsa County District Attorney's office on August 1, 2018, and assigned to the Traffic and Misdemeanor division. The "Provisional Assistant District Attorney" title was an unofficial designation applied within the Tulsa County District Attorney's office to individuals who were hired as Assistant District Attorneys but were not yet licensed to practice law. At the time of her hiring, Sweeney had recently graduated from The University of Tulsa College of Law and taken the July 2018 Oklahoma Bar Exam. Sweeney was not a licensed legal intern
[1] at the time, or at any time previously, and she did not hold any special permit to practice law in Oklahoma. On September 7, 2018, Sweeney learned that she failed the Oklahoma Bar Exam, but she remained employed at the Tulsa County District Attorney's office.
Â¶8 Despite not having a legal intern license, Sweeney began representing the State of Oklahoma in criminal proceedings shortly after her employment began. In the period from August 1, 2018 to November 13, 2018, Sweeney made court appearances in numerous criminal misdemeanor cases, negotiated plea agreements with defendants and their counsel, and argued motions on behalf of the State. On October 12, 2018, Sweeney represented the State in a non-jury trial in Tulsa County, during which she cross-examined witnesses and presented arguments to the court. On November 6, 2018, Sweeney, along with a licensed attorney from the District Attorney's office, represented the State in a jury trial, during which Sweeney questioned prospective jurors, gave an opening statement, conducted direct examination of a witness, and presented closing arguments.
Â¶9 On November 13, 2018, Sweeney presented a complaint about a defense attorney to Special Judge April Seibert, who had presided over the jury trial the previous week. During her conversation with Judge Seibert, Sweeney indicated that she was not licensed to practice as an attorney, legal intern, or otherwise. Judge Siebert directed Sweeney to immediately cease engaging in any activities that would constitute the practice of law. Judge Siebert then contacted Respondent and First Assistant District Attorney Erik Grayless and advised them of what Sweeney had told her. Both Respondent and Grayless indicated to Judge Seibert that they were not aware Sweeney was practicing without a license.
Â¶10 Following his conversation with Judge Seibert, Grayless initiated an internal investigation in the District Attorney's office to determine if other employees were engaging in the unauthorized practice of law. The internal investigation revealed that at least two other employees, Randall Young and Michael Shouse, had engaged in the unauthorized practice of law. At some point in November 2018, Grayless contacted the Oklahoma Bar Association and submitted a voluntary disclosure that employees of the District Attorney's office who were not licensed to practice law had represented the State of Oklahoma in criminal proceedings.
II. Count II: The Young Grievance
Â¶11 In or around April 2018, Randall Young was hired by the District Attorney's office and assigned to Respondent's division. At the time of his hiring, Young was a third year law student at the University of Tulsa College of Law. Young graduated from law school in May 2018 and took the July 2018 Oklahoma Bar Exam. Young learned that he passed the Bar Exam on September 7, 2018, and was sworn in on September 25, 2018. Prior to his swearing-in, Young had never held a license to practice law in Oklahoma, as a legal intern or otherwise.
Â¶12 Despite being unlicensed at the time, Young began representing the State of Oklahoma in criminal proceedings in August 2018. Prior to his swearing-in on September 25, 2018, Young made court appearances in numerous criminal misdemeanor cases, negotiated plea agreements with defendants and their counsel, and argued motions on behalf of the State. On August 27 and 28, 2018, Young, along with a licensed attorney from the District Attorney's office, represented the State in a jury trial, during which Young questioned prospective jurors, gave an opening statement, conducted direct examination of a witness, and presented a closing argument. On September 7, 2018, Young represented the State in a non-jury trial, during which he examined witnesses and presented evidence to the court.
III. Count III: The James, Deane and Shouse Grievance
Â¶13 In September 2017, Johnnie James was hired by the Tulsa County District Attorney's office and assigned to Respondent's division. At the time of his hiring, James was a licensed attorney in North Carolina, but he was not licensed in Oklahoma. James applied for a temporary permit
[2] to practice in Oklahoma until he could take the Oklahoma Bar Exam. His application was initially denied, but after appealing the decision, James was granted a temporary permit to practice on November 13, 2017. He was sworn in on November 14, 2017. However, prior to receiving his temporary license, James began representing the State of Oklahoma in criminal proceedings. Between October 9, 2017, and November 13, 2017, James made court appearances in numerous criminal misdemeanor cases, negotiated plea agreements with defendants and their counsel, and argued motions on behalf of the State.
Â¶14 In March 2018, Christopher Deane was hired by the Tulsa County District Attorney's office and assigned to Respondent's division. At the time of his hiring, Deane had recently graduated from the University of Tulsa College of Law. He had taken the February 2018 Oklahoma Bar Exam and was awaiting his results. Deane was not a licensed legal intern at the time of his hiring or at any time previously, and he did not hold any special permit to practice law in Oklahoma. Deane passed the Bar Exam and was sworn into the practice of law on April 17, 2018. However, prior to receiving his license to practice, Deane began representing the State of Oklahoma in criminal proceedings. Between March 28, 2018, and April 11, 2018, Deane made court appearances in numerous criminal misdemeanor cases, negotiated plea agreements with defendants and their counsel, and argued motions on behalf of the State.
Â¶15 In May 2018, Michael Shouse was hired by the Tulsa County District Attorney's office and assigned to Respondent's division. At the time of his hiring, Shouse had recently graduated from the University of Tulsa College of Law. Shouse was not a licensed legal intern at the time of his hiring or at any time previously, and he did not hold any special permit to practice law in Oklahoma. Shouse took and passed the July 2018 Oklahoma Bar Exam. He was sworn into the practice of law in Oklahoma on September 25, 2018. However, prior to receiving his license to practice, Shouse began representing the State of Oklahoma in criminal proceedings. Between May 21, 2018, and September 14, 2018, Shouse made court appearances in numerous criminal misdemeanor cases, negotiated plea agreements with defendants and their counsel, and argued motions on behalf of the State.
Â¶16 With respect to Sweeney, Young, James, Deane, and Shouse, Respondent assigned their cases and assisted and supervised them in their work.
Discussion
Â¶17 In all three counts, and with all five of the individuals above, Respondent stands accused of the same misconduct and violations of the ORPC and RGDP. Specifically, Complainant alleges that Respondent neglected her supervisory role over these five individuals and, in doing so, violated Rules 5.3(b), 5.3(c), 5.5(a), 8.4(a), and 8.4(d), ORPC, and Rule 1.3, RGDP. For the sake of simplicity, we will examine Respondent's alleged misconduct on a rule-by-rule basis.
Â¶18 Rule 5.3 sets out a lawyer's professional obligations as to nonlawyers with whom they are associated.
[3] Rule 5.3(b) in particular requires that a lawyer make reasonable efforts to ensure that the conduct of nonlawyer employees under the lawyer's supervision are compatible with the lawyer's professional obligations. Respondent has stipulated to the fact that she was the direct supervisor of Sweeney, Young, James, Deane, and Shouse. Respondent has further stipulated that she assigned work to these five individuals and that she was aware that they were engaged in the practice of law despite being unlicensed. Based on these stipulations, Respondent not only failed to make reasonable efforts to ensure these individuals' conduct was consistent with her professional obligations, but also actively facilitated their unauthorized practice. Allowing unlicensed individuals to engage in the practice of law was not compatible with Respondent's professional obligations. Accordingly, we find by clear and convincing evidence that Respondent violated Rule 5.3(b).
Â¶19 Rule 5.3(c) holds a lawyer responsible for the misconduct of their nonlawyer employees or associates under two circumstances: (1) when the lawyer orders or ratifies the conduct; or (2) when the lawyer has managerial or supervisory authority and knows of the misconduct but fails to prevent it. Based on Respondent's stipulations, she knew of the misconduct by the five individuals under her supervision and failed to stop it or take any other remedial action. Additionally, given that Respondent assigned these five individuals their work, she directed, or at the very least ratified, their misconduct. Accordingly, we find by clear and convincing evidence that Respondent violated Rule 5.3(c).
Â¶20 Rule 5.5(a) clearly forbids an unlicensed attorney from practicing law.
[4] When Respondent assigned casework to Sweeney, Young, James, Deane, and Shouse, she knowingly and willfully assisted them in the unauthorized practice of law in violation Rule 5.5(a).[5]
Â¶21 Rule 8.4(a) makes it professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.
[6] Respondent's conduct violated Rule 8.4 for the same reasons it violated Rule 5.5(a).[7] Respondent, at best, failed to adequately supervise Sweeney, Young, James, Deane, and Shouse, and at worst, assisted or induced their unauthorized practice of law.
Â¶22 Rule 8.4(d) makes it professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. We have previously held that in order for an attorney's misconduct to be considered prejudicial to the administration of justice it must include some element of "deceit, dishonesty, misrepresentation, criminality, sexual misbehavior or other morally reprehensible conduct." State ex rel. Okla. Bar Ass'n v. Moody, 2017 OK 30, Â¶10, 394 P.3d 223, 225 (citing State ex rel. Okla. Bar Ass'n v. Minter, 2001 OK 69, Â¶24, 37 P.3d 763, 774). By failing to adequately supervise those in her department and allowing nonlawyers to engage in the unauthorized practice of law, Respondent was complicit in and responsible for a pattern of dishonesty and misrepresentation to Oklahoma courts, defendants, and opposing counsel. Judge Siebert testified at Respondent's hearing before the Tribunal that she was "shocked and embarrassed" to know that nonlawyers had been appearing in her court room. Judge Siebert also testified to her belief that Respondent's conduct and that of the District Attorney's office has undermined public trust in the legal process. More troubling than matters of trust and reputation, for those defendants whose cases were prosecuted by unlicensed prosecutors, is that Respondent's conduct placed in jeopardy their constitutional rights.[8]
Â¶23 Based on the foregoing, with respect to Counts I, II, and III, we find that Complainant has established by clear and convincing evidence that Respondent engaged in misconduct in violation of Rules 5.3(b), 5.3(c), 5.5(a), 8.4(a), and 8.4(d), ORPC. Furthermore, we find that Respondent has engaged in acts contrary to prescribed standards of conduct and which bring discredit upon the legal profession, in violation of Rule 1.3, RGDP.
[9]
Mitigation
Â¶24 Respondent has practiced law for approximately 20 years and has not previously been the subject of any formal discipline. Respondent has been removed from her supervisory role, and since her misconduct came to light, the District Attorney's office has implemented various safeguards to ensure that unlicensed individuals do not engage in the practice of law in the future. The office has instituted a color-coded badge system that clearly identifies which individuals are licensed to practice law, and that system has been communicated to the courts in Tulsa County. The office has abandoned the designation of "Provisional Assistant District Attorney" for new hires who have not yet been admitted to practice. Finally, the office has updated their handbook for legal interns to more clearly identify the scope of tasks that unlicensed individuals are allowed to perform.
Â¶25 For purposes of mitigation, we must also note that responsibility for the misconduct in question does not lie exclusively with Respondent. While she was the primary supervisor of her division, the office was generally supervised by First Assistant District Attorney Erik Grayless and District Attorney Steve Kunzweiler. During his testimony before the tribunal, Grayless acknowledged his responsibility for the five individuals in question but stated that he had little involvement in their daily activities. While we recognize the need for delegation in large offices like that in the Tulsa County District Attorney's office, Respondent was a supervisor who was nonetheless subject to supervision herself. Furthermore, each of the five unlicensed individuals were at the time of the alleged misconduct seeking admission to the Oklahoma Bar. As such, they must have--or should have--understood on some level the significance of admission to the Bar, namely that one cannot practice law prior to admission, absent special permission from this Court.
Discipline
Â¶26 Our goals in bar disciplinary matters are to protect the interests of the public and preserve the integrity of the legal profession, not to punish attorneys. Kinsey, 2009 OK 31, Â¶15, 212 P.3d at 1192. With these goals in mind, we must weigh all relevant factors including those that justify severe sanctions and those that would mitigate the severity of discipline. State ex rel. Okla. Bar Ass'n v. Stewart, 2003 OK 13, Â¶19, 71 P.3d 1, 4. We must also weigh the deterrent effect of our discipline on the Respondent and the Oklahoma Bar as a whole. State ex rel. Okla. Bar Ass'n v. Taylor, 2003 OK 56, Â¶22, 71 P.3d 18, 29.
Â¶27 We have previously considered cases involving failures of supervision and unauthorized practice of law by unlicensed individuals. The majority of these cases, however, involve lawyers in private practice allowing administrative staff to engage in the practice of law on the lawyer's behalf or other conduct inconsistent with the lawyer's professional obligations. For example in State ex rel. Okla. Bar Ass'n v. Hill, 2012 OK 66, 281 P.3d 1264, the respondent failed to adequately supervise administrative staff, including his ex-wife, who were commingling client funds with the respondent's personal funds and drawing on the respondent's operating and trust accounts for personal benefit. The respondent also failed to act with diligence in representing other clients, failed to communicate with clients, and failed to maintain good accounting practices. Id. at Â¶Â¶31-32, 281 P.3d at 1270-72. Taking into account mental health issues that the respondent was experiencing at the time, we found that the respondent's misconduct warranted a public censure. Id. at Â¶42, 281 P.3d at 1274.
Â¶28 In State ex rel. Okla. Bar Ass'n v. Martin, 2010 OK 66, 240 P.3d 690, the respondent failed to supervise a paralegal who entered into an agreement with a client to perform legal services without the respondent's knowledge or consent; made misrepresentations to the client about the respondent's involvement in the case; and engaged in the unauthorized practice of law. The respondent had not previously been subjected to any prior discipline, cooperated with the OBA during its investigation, and made restitution to the clients harmed by the paralegal's conduct. Id. at Â¶20, 240 P.3d at 700. We found that the respondent's misconduct warranted a public reprimand. Id. at Â¶32, 240 P.3d at 702.
Â¶29 In State ex rel. Okla. Bar Ass'n v. Sheridan, 2003 OK 80, 84 P.3d 710, the respondent failed to adequately supervise his ex-wife who worked as an administrative assistant and who made misrepresentations to clients, forged filing stamps, and hid correspondence from the OBA directed to the respondent. In other instances, the respondent failed to render competent and diligent representation, charged unreasonable fees, and mishandled client property. Id. at Â¶Â¶31-35, 84 P.3d at 717. We determined that the respondent's misconduct warranted a six-month suspension. Id. at Â¶46, 84 P.3d at 719.
Â¶30 While these prior decisions are instructive, we must account for the unique circumstances of the present case. Kinsey, 2009 OK 31, Â¶16, 212 P.3d at 1192. Most importantly, we must consider the nature of the work being done by Respondent, her superiors, and those under her supervision. In the ORPC, the role of a public prosecutor is considered distinct from that of other lawyers: "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."[10]
Â¶31 The facts of this case reveal that Respondent, and the unlicensed prosecutors she supervised, not only failed to accomplish justice for the defendants whose cases they prosecuted, but also worked an injustice themselves. The rules and standards governing the practice of law in Oklahoma are set out by law in Title 5 of the Oklahoma Statutes, and it is clear that Respondent, and consequently the District Attorney's office, failed to comply with those rules and standards.
[11]
Â¶32 One of our primary interests in disciplinary proceedings is preserving the integrity of the courts and the legal profession. Kinsey, 2009 OK 31, Â¶15, 212 P.3d at 1192. Incidents like those at issue here are precisely the type that undermine public trust in the legal system and profession. As such, the discipline imposed must reflect to the public the seriousness with which we treat this misconduct. Accordingly, we find that public censure is appropriate to protect the public interest and preserve the integrity of the legal profession.
Assessment of Costs
Â¶33 On June 5, 2020, Complainant filed an application to assess the costs of the disciplinary proceedings, in the amount of $4,801.58, to Respondent. Respondent did not file an objection to the application. Rule 6.16, RGDP, provides that in disciplinary proceedings where discipline actually results, "the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown." Respondent is hereby ordered to pay costs in the amount of $4,801.58 within ninety days of the effective date of this opinion.
RESPONDENT PUBLICLY CENSURED AND ORDERED TO PAY COSTS
Darby, C.J., Kane, V.C.J., Kauger, Winchester, Edmondson, Combs (by separate writing), Gurich, JJ., concur; Colbert, J., not present.
FOOTNOTES
[1] A "licensed legal intern" refers to an individual who holds a limited license to practice law under the supervision of a licensed attorney pursuant to 5 O.S.supp.2018, ch. 1, app. 6. The purpose of the licensed legal internship program is "to provide supervised practical training in the practice of law, trial advocacy and professional ethics to law students and to law graduates who have applied to take the first Oklahoma Bar Examination after graduation." 5 O.S.supp.2018, ch. 1, app. 6, Â§ 1.1.
[2] Temporary permits to practice law are provided for under Rule 9 of the Rules Governing Admission to the Practice of Law in the State of Oklahoma, which states:
Temporary permits to practice law until the conclusion of the next succeeding bar examination and report of the results thereof may be granted upon the recommendation of the Board of Bar Examiners after a showing of public convenience and necessity, which shall include but not be limited to a showing by a qualified legal services provider as defined in subsection B of this rule, or in the private sector where a case of extreme hardship is shown, provided the applicant has taken and passed the Multistate Professional Responsibility Examination. All applicants for temporary permit to practice law shall file with the Board of Bar Examiners an application for such temporary permit in addition to regular application for admission to the bar examination. The Board shall, as soon as practicable, report its recommendation on such application for temporary permit to the Supreme Court, together with a copy of such application.
5 O.S.supp.2016, ch. 1, app. 5, Rule 9. The temporary permit is immediately revoked upon announcement of the results for applicants who fail the bar exam, or expires on the date successful applicants are sworn into practice. Id. at Rule 10.
[3] Rule 5.3, ORPC, provides:
With respect to a nonlawyer employed or retained by or associated with a lawyer:

[...]
(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

[4] Rule 5.5(a), ORPC, provides:
A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.
Comment 2 to Rule 5.5, ORPC, states:
The definition of the practice of law is established by law and varies from one jurisdiction to another. Whatever the definition, limiting the practice of law to members of the bar protects the public against rendition of legal services by unqualified persons. This Rule does not prohibit a lawyer from employing the services of paraprofessionals and delegating functions to them, so long as the lawyer supervises the delegated work and retains responsibility for their work.
[5] Our opinion today does not negate the individual responsibility of Sweeney, Young, James, Deane, and Shouse, who were all seeking admission to the Bar at the time of the incidents in question, but whose actions are not before us at this time.
[6] Rule 8.4, ORPC, provides:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
[...]
(d) engage in conduct that is prejudicial to the administration of justice;

[....]

[7] "A lawyer violates the O.R.P.C. when a failure to supervise a nonattorney employee enables the employee to engage in the unauthorized practice of law by performing legal services without proper supervision by a licensed lawyer. See, e.g., O.R.P.C., Rules 5.3, 5.5(a), and 8.4(a)." State ex rel. Okla. Bar Ass'n v. Gaines, 2016 OK 80, Â¶13, 378 P.3d 1212, 1218-19 (citing State ex rel. Okla. Bar Ass'n, 2010 OK 66, Â¶Â¶12-14, 240 P.3d 690, 697-98.)
[8] We note with particularity that Sweeney, acting as an unlicensed prosecutor, participated in the non-jury trial of defendant Bryan Christopher O'Rourke, in the District Court in and for Tulsa County, Case No. CM-2017-1946, on October 12, 2018. Defendant O'Rourke was convicted on October 17, 2018, on one of two counts and sentenced to 90 days in the Tulsa County Jail.
[9] Rule 1.3, RGDP, provides:
The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.
[10] Comment 1 to Rule 3.8, ORPC.
[11] The unauthorized practice of law in Oklahoma is not a criminal offense, but rather a violation of the ORPC.

COMBS, J., with whom Darby, C.J. and Gurich, J., join, concurring:
Â¶1 I concur in the imposition of discipline for Ms. Jack's violations of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S. 2011, ch. 1, app. 3-A and the Rules Governing Disciplinary Proceedings (RGDP) 5 O.S. 2011, ch. 1, app. 1-A. I write to emphasize the complicity of others within the district attorney's office for Tulsa County, specifically First Assistant District Attorney Erik Grayless. Ms. Jack was not the only supervisor responsible for the actions of the five individuals who intentionally violated the rules authorizing the practice of law in the State of Oklahoma. Mr. Grayless was in charge of the intern program in the office. Mr. Grayless was the person listed as the supervising attorney on any licensed legal interns paperwork. Ms. Jack relied on Grayless and the "interns" to know what they could or could not do. She did not receive any paperwork confirming the employees licensing status but only relied upon her First Assistant Grayless and the Human Resources director. Ms. Jack's first mistake was relying on her supervisor, Mr. Grayless. For Ms. Jack to take the entire blame for the office failure to supervise is unfortunate and fundamentally unfair. From this record, Mr. Grayless should bear blame as well. Ultimately the buck must stop with the District Attorney himself, Steve Kunzweiler; none of the leadership of the Tulsa County District Attorney's office should be allowed to escape blame.
Â¶2 The five individuals practicing without a license, Kelly Sweeney, Randall Young, Christopher Deane, Michael Shouse and Johnnie James, each have begun their legal careers in Oklahoma by committing fraud upon the courts they appeared before. As to each of them, this fraud cannot be ignored, allowed to fade away or be forgotten.